Morning, your honors. Esteemed colleague for the government, may it please the court. My client, Leonard Tate, requests an order from this court reversing the district court's order denying his motion to suppress and also remanding back consistent with his conditional plea of guilty. Now, Mr. Tate advances three cascading arguments on this appeal, but I admit that the appeal really hinges on one legal question in this novel case, and that is whether a substantial justification exists in the affidavit, and that's document 69-7, to support a finding of probable cause to search Mr. Tate's hotel room for marijuana. And I think, your honor, in this common sense objective reasonableness inquiry, this issue really breaks down to two points. The first is a question of reliability, and I understand that in most of our contemporary case law, the reliability question as related to affidavits most frequently comes up anymore in tipster cases, CI cases, and canine cases. But, and I understand as the government has pointed out, and the district court pointed out, there are practical and technical differences between a foundation for reliability for a canine alert and foundation for reliability for a human officer's affidavit. Those are different. They're distinct, and I understand that. But there are two fundamental consistencies there. First, that they must be reliable, and that the search must be objectively reasonable. Now, I think then on kind of that first sub-issue, the question becomes, is the affiant officer's testimony in that affidavit sufficiently reliable to support a substantial justification of probable cause when that officer indicates that they're trained in observing and identifying the odor of marijuana? But then that affidavit goes on to provide written testimony that in an enclosed space with a permeating strong odor of marijuana, they're able to isolate that down to a specific location, one door among 100. That's what makes this case unique, and I think that's the critical question as it relates to the reliability here, because the training, trained in recognition of illicit drugs and drug paraphernalia, quoting to the affidavit, and quote, I am also familiar with the odor of marijuana because of my training and experience. Now, we probed into this issue in the examination before the district court, and in fact, bear out that, well, in this process of smelling room doors is not a doctrinal process, this is not standardized training, this is not training that the officer in this case had received. And so I think that's the critical question. And I think that the Eighth Circuit cases, and I will concede here, that there is no case on point that says what I would like it to say. And so I think then the analysis here becomes a bit comparative. Now, even dating back to 1933 in Nathanson v. United States, the United States Supreme Court there overturned a circuit saying that an officer's affidavit, and that was a terror fact probation case, saying, on information and belief, the officer swore they had reason to believe that illegal liquors would be found in this domicile, that duties had not been paid on the liquors, and they were brought into the country illegally. And the court said, the United States Supreme Court said, the subjective information and belief is insufficient. We need some tangible and reliable fact here. And that's consistent with Ohio v. Beck and the United States Supreme Court's prescient warning that if an officer's subjective good faith alone becomes the test, then the Fourth Amendment protections are eroded. Yeah, but isn't it, even in the absence of specialized training, you know, any of us walking down the street can probably identify the unusual smell of marijuana. You know, isn't that enough? Your Honor, I agree with the Court's first point. And I would maybe take it a step further. I think nearly every adult in America can identify the odor of marijuana, and I don't dispute that. Anyone who went to a concert in the 70s and 80s. Fair, fair. Or a dorm room. Yeah, and I think that's very, very different. And if you look at the cases, and this is where the comparative analysis comes down, the Mitchell case, the Johnson case, Jardines, Walker, Turner, Girard, Stevie, all those are Eighth Circuit cases. I think your argument, and correct me if I'm wrong, isn't so much that he needs specialized training to identify the smell of marijuana, but maybe to pinpoint the particular door that it was behind. Precisely, Your Honor, yes. To identify, and so what we have here is a hotel that's permeated with an odor. Well, counsel, counsel, now you dwell on this so much. Does the record reflect, I know the David doesn't, how far it is from the front entrance to room 118 on the first floor, I assume, near the front entrance? Does it show how far it was? Not with precision, Your Honor, we don't show. I mean, like feet, or number of doors? Because this is a best value in. Some of the doors are right there. Yes, Your Honor. There are photographs in the record, and what we had is someone going and photographed a shot from the front door to the back of the lobby. From the lobby where the hallway forks off to the end of that hall. From the end of that hall. How many rooms was it to 118 from the lobby? Several, Your Honor. I don't recall off the top of my head, but you walk through the lobby past the dining area. There are stairwells and elevators there. Then there's a couple of doors, I don't know if it's a maintenance closet or what, and then there's a few hotel doors, door 118, and then many more doors, and then two wings and two floors. Proceed. But getting to your question, Your Honor, and I think that's exactly the center of gravity for my argument, is that what we have here is an officer not identifying the difference between the existence and non-existence of the odor of marijuana. We have an officer making sophisticated distinctions between high quantification and a higher quantification of that odor, and then based on that subjective belief, drawing an inference that it must be this door. Now, if you look at reliability... It doesn't have to be certaintude, right? It's just probable cause. Yes, Your Honor. Yes. It doesn't require certainty. I agree. Wouldn't you agree with me that if I'm the average person without training, if I'm closer to marijuana, I can smell it stronger than if I'm farther from it? I would agree, Your Honor. Yes. But I think the facts in this case, the unique facts in this case, present the question in a different way. For instance, in the Girard case, an officer, again, in a standalone structure observing the odor from outside, had climbed a ladder to peer into a window, came to an air exchange vent, identified the odor of marijuana. Now, that's the distinction there being between the odor's non-existence and the odor's existence. But here, the odor's existence permeates the building, and we've got some quantification, which is a more sophisticated analogy. His affidavit doesn't say permeated. It says smelled it in the front entrance. Yes, Your Honor. Going a little bit more into the facts and into the record at the officer's hearing or testimony at the hearing. But I think that reliability question is the threshold issue. But even if there is a basis of reliability, then the question becomes, well, what weight is the odor of marijuana afforded in this case under a totality of circumstances analysis and also through the lens of common sense? As you indicated, Judge, yes, individuals can identify the smell of marijuana. Yes, it's logical to infer that when you're closer to the marijuana that the smell would be greater. But I submit that this is not a close case. And if we're looking just at the weight and the circumstances here, the lack of training being one of those, that the observation and the testimony on the face of the affidavit should be given an appreciably lesser or lower weight. You also have a good after the fact fact that none was found in the room, right? Yes, Your Honor. And I don't think that's a factual finding. But the district court does say or sum things up in the way of saying that Officer Collins identified an odor and tracked it to its source. Well, we know that that's not accurate. The source wasn't located. Now, if this is a Harris case or a K-9 case and a blind set testing in a controlled environment and this dog goes to room 118 and behind room 118 there's no marijuana, that's a failure that would forever be part of the reliability determination for that K-9 officer. And so, yes, Your Honor. But I don't think that the court needs to get there in this case because I think that the affidavit lacks the reliability or indicia of reliability on its face. Also, that the weight should be appreciably less. And with that, Your Honor, I would reserve the balance of my time for rebuttal. Thank you, Mr. Waston. Thank you. Good morning, and may it please the court. Matt Kopp for the United States. Bismarck Police seized 2,879 fentanyl pills and $15,570 in cash from a safe in Leonard Tate's hotel room. In the four corners of the original warrant affidavit established probable cause to search the room. An eight-year veteran police officer swore to a judge that he had training and experience in identifying the odor of marijuana and that he smelled the odor coming from the door of Tate's hotel room. The affidavit also provided information about Tate's room reservation and his criminal history to support probable cause. Of course, it did turn out to be a dog failure, so to speak, right? There was no marijuana found. No marijuana was found. That's correct, Your Honor. And so, the officer walking through the hotel happened at about 4 o'clock, about 4.30 in the afternoon on August 21st of 2022. The search warrant was executed the next morning at 9.30. And so, the best explanation is that the marijuana was smoked between that time and there was no marijuana found. Or flushed. Or flushed, or whatever the case may be.  And so, there was a delay between that time and that time. Say the times again. I've missed it. So, the officer walked through the hotel about 4 o'clock in the afternoon on August 21st, and the search happened at about 9.30 the following morning. I see. Okay. The deference that's given to an issuing judge's probable cause determination should be respected here in the district court's judgment affirmed and, as Mr. Tate just argued, the argument there is to look outside the affidavit and primarily at the officer's ability to detect the odor of marijuana. Well, now that we know the times, is there a reason the warrant was issued an hour or two after the affidavit? Right? And after the walkthrough? I believe the affidavit was submitted to the court at 6.30 that evening. Right. And given immediately. Signed by the district judge there. Correct, Your Honor. The state district judge there. Yes. So, there's about two hours between the time. Right. And then they don't execute it until the next morning. Correct, Your Honor. Was there ever an explanation? I know it's not the Four Corners. I believe that the suppression hearing officer, Collins, testified that after he identified the odor and got the warrant issued, he called basically the Bismarck Metro Area Narcotics Task Force in order to organize the search warrant being executed the following morning. That's pursuant to standard practice. So, here this affidavit, and it is only the Four Corners of the affidavit that the court can consider in deciding whether there's a substantial basis for probable cause. But there were three assertions that support it. Number one, the officer smelled the odor of marijuana coming from the room. Number two, the room reservation information was consistent with drug trafficking activity. And number three, Tate had criminal history involving drugs. Now, the Eighth Circuit has precedent going back 60 plus years that an officer detecting the odor of marijuana from a specific place is sufficient to establish probable cause. And Mr. Wallstead referenced some of those cases. The one I want to draw the court's attention to specifically is Miller v. Sigler. And in that case, an officer identified the odor of marijuana coming from a specific dwelling in a multi-unit apartment complex. And the court found that that was sufficient to establish probable cause, saying that probable cause is not absolute certainty, and that officers are generally familiar with the odor of marijuana. They know how to detect it. And in that situation, it established probable cause. And those cases align with common sense. Judge Grunder, as you referenced, almost anyone can identify the odor of marijuana walking down the street. I smelled it in the elevator in the hotel this morning, actually, which brought a little smile to my face. We won't ask you which hotel you were at. Not the same one as you, I don't think, Your Honor. But the officer described it at the suppression hearing as similar to smelling burnt popcorn or, you know, being able to identify an odor getting stronger or weaker as it goes, that's sufficient. So the idea that the officer needs almost like superhuman smell to be able to follow the odor of marijuana a relatively short distance, and to answer your question from earlier, Judge Benton, Officer Collins estimated that it was about 20 to 25 yards between the lobby of the hotel to that door.  He smelled a couple of doors on one side, found room 118 where he believed the odor was coming from the strongest. He smelled a couple doors on the other side, came back and confirmed that that's where the odor came from. And, of course, the court can't consider that in the affidavit context, but that's important in the good faith context where the court can look beyond just what's in the affidavit to decide whether a reasonable officer could have relied on that. Another important thing to note here is that the officer said that he had training experience. Right in the affidavit, he says he has training experience to identify the odor of marijuana. In Daigle, United States v. Daigle, a 2020 case authored by Judge Shepard, says that an officer can state conclusions based on training experience without having to detail all that experience. And so later on at the suppression hearing, Officer Collins testifies that he's done this hundreds of times. He's walked through apartment complexes and hotels to identify where the odor of marijuana is coming from, and that's exactly the kind of experience that the issuing judge could infer when an eight-year police officer says, I have experience in doing this and finding where the odor of marijuana comes from. So that's sufficient to establish a probable cause there. As far as the argument that an officer almost has to be on par with a canine, I don't think that holds water here. Dogs aren't suited for every situation, including the close quarters of the hotel. The officer testified about that at the hearing. And I think the fact that we're talking about marijuana here is important. As we said, almost everyone in this room can identify the smell of marijuana. I don't think anyone in this room can identify the smell of fentanyl or heroin or meth. And so a drug dog can certainly assist law enforcement in that effort, and those resources are great to have. But when you have an officer who can plainly smell marijuana, identify where it's coming from, that should be sufficient. And that unenhanced officer detection of marijuana has been accepted as a probable cause for decades, and there's no reason to retreat from that. I also want to just highlight the room reservation information. Judge Shepard, do you have a question? Well, I was kind of waiting to see if you were going to reach this, but the good faith Yes, Your Honor. exception seems to at least arguably apply here. Even if we might chip away at the officer's ability to exactly locate the source of the odor, at least the district court thought so. Yes, Your Honor. And the good faith exception, of course, the court can look outside of the four corners of the affidavit and consider everything that was available to the officer, even if it wasn't presented to the issuing judge. And if you do that here, probable cause becomes even more clear, because the very kind of reliability details that Tate is asking for, those are all testified about at the suppression hearing. So the officer testifies that he sees marijuana hundreds of times, that he previously submitted within 100 warrants for the odor of marijuana, numerous times being based on the ability to smell the odor. He had smelled the seams on both sides of the doors to identify where it was coming from, how far he was, how many other doors that he smelled. And actually at page 27 of the transcript, Mr. Walsted asked Officer Collins, it sounds like that's a technique that you developed through the course of experience, correct? And the officer agreed and responded, and I would say probably training also for when I was on a field training as a new police officer. And so right there, we have testimony in the record that says this officer has training experience in identifying not just the smell of marijuana, but the source for an odor of  So right there, that is probable cause. Also testified about the odor being strong, and another hotel employee saying that they smelled the odor as well. So corroboration there. Tate also makes some arguments about the officer omitting or providing false information in affidavit, and those are even more directly contradicted in the good faith context. There's some speculation that Officer Collins went to the hotel to target him because of his presence at a previous search warrant. Officer Collins flatly testified he was not there to target him. He was there on routine control, which was something that he normally did at hotels in Bismarck that were known for drug activity. And he didn't even know who occupied the room when he went and smelled marijuana. He didn't find that out until he went and found the guest list. And on the information from the guest list, the room reservation, that's where Dago comes in again, too. He can state conclusions about knowing that Michigan is a drug trafficking source state for individuals in Bismarck without saying, I've arrested 40 people from Michigan and hotels in Bismarck. He doesn't have to do that. Same thing with the safe and the extended stay. All that can be inferred from the officer's experience. Maybe I missed this, but did you comment on the fact that when the room was searched, no marijuana was found? Yes, Your Honor. And that's just, I believe, a product of the search warrant being executed the day after the smell happened. Don't know that for sure. It's not on the record why there wasn't marijuana in the room, but it was executed the next day. Also, criminal history is the last thing I'll mention. And this court has found multiple times that criminal history contributes to probable cause to search a place for a suspect's residence that has that history with drugs. And there was convictions for a dangerous drugs felony and dangerous drugs misdemeanor noted in the affidavit here. So with that, the four corners of the affidavit establish probable cause, and the good faith exception applies even if not. The judgment should be affirmed. Thank you. Thank you. Mr. Wolstad, we'll give you two minutes. Thank you, Your Honor. May it please the Court. First, esteemed counsel for the government brought up the Daigle case. I think the Daigle case is important, and I draw a different conclusion from it. The Daigle case is a child porn and Internet crimes case. Again, getting to reliability of the affidavit. Do you want to do Miller v. Sigler? Yes, Your Honor. I'm going to get there real quick. Computer forensics. If an affidavit says, I have training in basic computer operation, but the testimony in the affidavit says, I'm conducting sophisticated forensics, I think the reliability question is important. Getting to Miller v. Sigler, Your Honor, and the cases beyond that. Now, Miller v. Sigler was decided 70 years ago. Since then, this... We're bound by previous panels.  Yes, Your Honor. Yes, Your Honor. But I think it's important to note the distinction, again, between identification of the odor, distinguishing between its existence and its non-existence, and the more sophisticated determination and reliability question that's being called here. I don't believe, and I know that this came up more recently in the Caves case and others, and I don't believe that there is a hard line that the odor of marijuana alone equals probable cause. I think that would be a very dangerous precedent in and of itself to just say that one equates to the other without any more. And I don't think that that's what Miller v. Sigler stands for, but getting to the next point that I wanted to raise, which is deference. And Miller v. Sigler, Hallman, and Dickerson are important Eighth Circuit cases in this regard, because although deference to the magistrate is just and proper under these circumstances, it's not without limitation. Now, in Miller, in Hallman, and in Dickerman, in each one of those cases, and as I suspect we would like to do in this case, when we look at an affidavit, and now we know the facts further into the affidavit, each of those cases the magistrate asked additional questions, each of those cases those additional questions provide a probable cause. Thank you, Your Honor. Thank you, Counsel.